## BOARD OF COUNTY COMMISSIONERS OF CARROLL COUNTY, MARYLAND *v.* JOSEPH D. STEPHANS ET AL.

[No. 26, September Term, 1979.]

*Decided December 6, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*John C. Murphy* for appellant.

*Charles M. Preston,* with whom were *Hoffman, Stoner & Preston* on the brief, for appellees Joseph D. Stephans et al. *Rob Ross Hendrickson,* with whom was *J. Cookman Boyd, Jr.,* on the brief, for appellee American Stores Company. *G. Warren Mix* on the brief for appellee Joseph D. Stephans.

SMITH, J., delivered the opinion of the Court.

We are here presented with the question of whether the right of appeal from "a zoning action by the local legislative body" contained in Maryland Code (1957, 1978 Repl. Vol.) Art. 66B, § 4.08 (a) includes the right of appeal from the enactment of a zoning text amendment or the adoption of a

comprehensive "mini" plan by such a local legislative body. Since we conclude that it does not, we shall affirm that portion of the judgment of the Court of Special Appeals holding that the adoption of the plan was not embraced within the term "zoning action." We shall reverse so much of the judgment as held that the legislative body's enactment of a text amendment was included within the right of appeal thus granted. The opinion of the Court of Special Appeals was reported in *Stephans v. Board,* 41 Md. App. 494, 397 A.2d 289 (1979).

The facts are simply stated. The County Commissioners of Carroll County took a series of actions on December 14, 1977, which sparked this controversy. The Carroll County Planning and Zoning Commission had recommended to the commissioners the adoption of a comprehensive "mini" plan for the Freedom area of that county and its environs, the addition of a new section to the county zoning ordinance providing for what was known as a "R-40,000 Residence District," a change in the standards for approval of subdivisions, provision for schools and colleges as a principal permitted use in a conservation zone, a specification that department stores be a permitted use in a local business district, and comprehensive rezoning of the Freedom area. The county commissioners adopted each of those recommendations.

The appellees objected for a variety of reasons to certain of those actions by the county commissioners. Accordingly, they invoked the provisions of Code (1957, 1978 Repl. Vol.) Art. 66B, § 4.08 (a), as last amended by Chapter 267 of the Acts of 1975, and appealed to the Circuit Court for Carroll County. In point of fact, three appeals were entered. In each instance the trial judge sustained demurrers by the County. Ultimately, final judgments were entered in each of the cases pursuant to Maryland Rule 605 a.

Art. 66B, § 4.08 (a) provides:

> (a) *Who may appeal; procedure.* — Any person or persons, jointly or severally, aggrieved by any decision of the board of appeals, or by a zoning

action by the local legislative body, or any taxpayer, or any officer, department, board, bureau of the jurisdiction, may appeal the same to the circuit court of the county. Such appeal shall be taken according to the Maryland Rules as set forth in Chapter 1100, Subtitle B. Nothing in this subsection shall change the existing standards for review of any zoning action.

The trial judge (Weant, J.) referred to and quoted from an opinion he had written in a similar case where he said:

A zoning action is an act or deed involving the division of the County into districts and the formulation and application of regulations having to do with structural and architectural designs of buildings and regulations prescribing use to which buildings may be put within a designated district.

He determined that the adoption of the "mini" plan and the adoption of the text amendments were not zoning actions. The Court of Special Appeals said:

We agree with the trial judge when he concluded that the actions of the County Commissioners were not zoning actions, at least insofar as the adoption of the "Mini Plan" is concerned. However, we disagree with his conclusion that the Text Amendment was also not a zoning action. [*Id.* 41 Md. App. 500.]

Our grant of certiorari on the petition and cross-petitions of the parties embraces three questions: (1) Do the words "zoning action" in Art. 66B, § 4.08 (a) encompass the adoption by a local legislative body of a comprehensive "mini" plan or a text amendment to the zoning ordinance, including the establishment of a new zoning district? (2) Does Art. 66B, § 4.08 (a) authorize a taxpayer who is not aggrieved, affected by or interested in a zoning action to appeal to a circuit court and to further appeal to the Court of Special Appeals. If so, is § 4.08 (a) of Art. 66B invalid because it violates the doctrine of separation of powers? (3) Do Art. 66B, § 4.08 (a) and

Subtitle B of Chapter 1100 of the Maryland Rules require an appellant to include in the petition of appeal factual allegations which show standing to take the appeal? Because of our conclusion as to the meaning of the term "zoning action," we shall be obliged to answer only the first question.

In *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 407 A.2d 738 (1979), Judge Digges recently spelled out for the Court the rules for statutory construction, citing cases:

> The polestar of statutory interpretation is to ascertain and carry out the real intent of the legislature when it enacts a statute. . . . This intent must first be sought from the words utilized in the enactment, with the terminology chosen being given its ordinary and popularly understood meaning. . . . However, if because of uncertainty interpretation becomes necessary, courts must consider not only the everyday meaning of the enactment's words, but also the effect of the proposed construction in light of the subject matter and purposes sought to be accomplished. . . . If the statute is susceptible of more than one construction which is both reasonable and consistent with commonsense, then we should apply the construction which will carry out its object and purpose. [*Id.* at 311.]

The problem here arises in part because of the word "action." Zoning has been defined by this Court. For instance, in *Applestein v. Baltimore,* 156 Md. 40, 143 A. 666 (1928), Judge Offutt said for the Court:

> The term "zoning" has come to have a technical and artificial meaning, which is different from its literary and etymological significance. And while in its literary sense it signifies a belt or girdle more or less symmetrical in outline, it is also used to describe the process of setting aside disconnected tracts of land varying in shape and dimensions, and dedicating them to particular uses designed in some

degree to serve the interests of the whole territory affected by the plan. [*Id.* at 51.]

In *Benner v. Tribbitt,* 190 Md. 6, 57 A.2d 346 (1948), in the context of a controversy where it was claimed that a municipal corporation had improperly denied issuance of a building permit, Judge Markell said for the Court:

There is no magic in the word "zoning", but there is a wide difference between exercise of the police power in accordance with a comprehensive zoning plan, which imposes mutual restrictions and confers mutual benefits on property owners, and arbitrary permission to A and prohibition to B to use their own property, at the pleasure of neighbors or at the whim of legislative or administrative agencies. [*Id.* at 20.]

We recently said in *Board of County Comm'rs v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979):

As we noted in *Wash. Co. Taxpayers Ass'n v. Board,* 269 Md. 454, 455-56, 306 A.2d 539 (1973), some confusion exists relative to the terms planning and zoning, which are not synonymous. Zoning is concerned with the use of property but planning is broader in its concept. 1 E. Yokley, *Zoning Law and Practice* § 1-2 (4th ed. 1978) comments:

Expressing the matter in another way, let us say that zoning is almost exclusively concerned with use regulation, whereas planning is a broader term and indicates the development of a community, not only with respect to the uses of lands and buildings, but also with respect to streets, parks, civic beauty, industrial and commercial undertakings, residential developments and such other matters affecting the public convenience and welfare as may be properly embraced within the police power. [*Id.* at 4.]

There are three integral parts of adequate land

planning, the master plan, zoning, and subdivision regulations. [*Id.* at 246.]

"Action" in the legal sense connotes a controversy between two or more opposing parties, usually in a court proceeding, but possibly before an administrative tribunal. A dispute or controversy is a key element, however, not found in these cases. Black's Law Dictionary (5th ed. 1979) says, for instance:

> Term in its usual legal sense means a suit brought in a court; a formal complaint within the jurisdiction of a court of law. Pathman Const. Co. v. Knox County Hospital Ass'n, Ind. App., 326 N.E.2d 844, 853. The legal and formal demand of one's right from another person or party made and insisted on in a court of justice. An ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. It includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court. [*Id.* at 26.]

In this regard *see generally Concannon v. State Roads Comm.,* 230 Md. 118, 123-24, 186 A.2d 220 (1962); *O'Neill & Co. v. Schulze,* 177 Md. 64, 70, 7 A.2d 263 (1939); *Baltimore v. Libowitz,* 159 Md. 28, 30, 149 A. 449 (1930); *Fountain v. State,* 135 Md. 87, 90, 108 A. 473 (1919); and *Paesch v. State,* 2 Md. App. 746, 747, 237 A.2d 83 (1968). It seems improbable, therefore, that the General Assembly could have had in mind when it used the term "zoning action" that it would be providing judicial review in the form of an administrative appeal from a legislative act adopting a comprehensive plan or amending the text of a zoning ordinance.

In this instance we are provided assistance by the legislative history of this section. In *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 403, 365 A.2d 279 (1976), Judge Levine observed for the Court, citing cases, "That resort may be had

to the legislative history of a statute when an ambiguity exists is a cardinal rule of construction." Accordingly, we turn to the history of this particular statute.

As was pointed out in *Gaster,* 285 Md. at 239, this zoning statute had its origin in the enactment of Chapter 599 of the Acts of 1933. This particular section is derived from Code (1957) Art. 66B, § 22. That section was concerned solely with the board of appeals. As it appeared in Code (1951) Art. 66B, § 22, the antecedent of the section with which we are now concerned said in pertinent part, "Any person . . . aggrieved by any decision of the Board of Appeals . . . may present to the circuit court of the county, a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality." Then § 22 went on to provide, "Upon the presentation of such petition the court may allow a writ of certiorari directed to the Board of Appeals to review such decision of the Board of Appeals . . . ." Section 22 was a long section. In dealing with the board of appeals it specified that it should consist of three members and one was to be appointed in every county or municipality using Art. 66B. The legislative body for the subdivision was authorized by § 22 to "provide that the said Board of Appeals m[ight], in cases where it [was] exceptionally difficult if not impossible to comply with the exact provisions of the ordinance, make such variation as w[ould] prevent unwarranted hardship or injustice and at the same time most nearly accomplish the purpose and intent of the regulations of the zoning plan." Chapter 321 of the Acts of 1957 repealed and reenacted § 22 with amendments. The actual text amendment to § 22 was a subsection enacted as § 22 (o) providing an appeal from circuit courts to this Court. However, Chapter 321 broke § 22 up into subsections so that the ancestor of § 4.08 (a) became § 22 (i) without any change in text. The powers of the board of appeals became § 22 (g) and were:

> (1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this subtitle or of any ordinance adopted pursuant thereto.

(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinances.

(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, the enforcement of the provisions of the ordinance will result in unwarranted hardship and injustice, but which will most nearly accomplish the purpose and intent of the regulations of the zoning plan.

The General Assembly next dealt with § 22 (i) when it enacted Chapter 36 of the Acts of 1962, an omnibus act intended, as the title put it, among other things, "to amend or repeal provisions of the Code of Public General Laws of Maryland and of the Public Local Laws of Maryland inconsistent with or superseded by the Maryland Rules of Procedure . . . ." Section 41 of that chapter amended § 22 (i) so that "[a]ny person . . . aggrieved by any decision of the board of appeals . . . m[ight] appeal the same to the circuit court of the county," eliminating the certiorari provision.

No further change was made to this particular subsection until the zoning laws were revised with the enactment of Chapter 672 of the Acts of 1970 which completely rewrote Art. 66B. That chapter contains this section in the following language:

*4.08* Appeals to the Courts

(*a*) Any person or persons, jointly or severally, aggrieved by any decision of the board of appeals, *or by a reclassification by the local legislative body,* or any taxpayer, or any officer, department, board, bureau of the [municipality] *jurisdiction,* may appeal the same to the circuit court of the county. *Such appeal shall be taken according to the Maryland Rules as set forth in Chapter 1100 Subtitle B.*

(That appearing in brackets was deleted from the former section. The italicized portion was new language.) Except for

some differentiation in capitalization, this section is precisely as it was recommended by the Maryland Planning and Zoning Law Study Commission in its final report submitted in December 1969. The note appearing under that section in the report states:

*This section is unchanged except for the inclusion of an appeal process from reclassification decisions of the local legislative body.*

*It can be argued that under the present system appeals from reclassification decisions may be launched in equity at any time. This has proven to be a detrimental factor to most persons concerned with such an action. The appeal process to be used, Chapter 1100, Subtitle B, Maryland Rules, requires noting of an appeal within thirty days and filing of the appeal within another ten days. This is ample time to bring an appeal for review (i.e. if a person is aggrieved by a decision it is encumbent upon him to react within a reasonable period of time).*

The change to the language now appearing in § 4.08 (a) came with the enactment of Chapter 267 of the Acts of 1975. The present wording was recommended by the Legislative Council to the General Assembly of 1975. The Legislative Council said in its report:

### Explanation

Senate Bill 76 of the 1974 Session was intended to clarify the right of appeal from the Circuit Court to the Court of Appeals from zoning reclassifications made by the legislative bodies of non-charter counties, municipalities and the City of Baltimore under Article 66B of the Annotated Code. Senate Bill 76 also empowered all counties, municipalities and the City of Baltimore to provide for an appeal by local ordinance or statute in other planning and zoning matters.[1]

---

1. Senate Bill No. 76 of the 1974 session as originally introduced provided further appeal to this Court from circuit courts and the Baltimore City Court in the matter of appeals to those courts arising under Art. 66B. It was

During the course of the deliberations, objections were voiced to the inclusion of charter counties under the provisions of Article 66B which normally is applicable only to non-charter counties.

The proposed legislation clarifies the right of appeal, and enables local jurisdictions to provide for other appeals for non-charter counties, municipalities and the City of Baltimore by amending the appropriate provisions of Article 66B. The proposed legislation also empowers charter counties to provide for appeals in planning and zoning matters by amending Article 25A, Section 5 (X), The Express Powers Act, pursuant to which charter counties derive their power to adopt planning and zoning regulations. [*Id.* at 193-94.]

---

amended to authorize the Mayor and City Council of Baltimore, the local legislative body of counties (including home rule counties) and the local legislative body of municipalities to provide for review by the circuit courts and the Baltimore City Court of matters arising under the zoning laws with further appeal to the Court of Special Appeals. Because of the reference to this bill in the Legislative Council report, the bill's preamble is of interest. It reads:

WHEREAS, Article 66B of the Annotated Code of Maryland — Zoning and Planning was recodified by Chapter 236 of the Laws of 1970, effective January 1, 1971; and

WHEREAS, Under the law prior to January 1, 1971, appeals from decisions of local legislative bodies to the Circuit Court and thence to the Court of Appeals were achieved through an equity action, cumbersome and time consuming in nature; and

WHEREAS, The prior statute did not expressly provide for appeal to the Circuit Court from reclassification by local legislative bodies; and .

WHEREAS, In the recodification of Article 66B in Sections 2.09 and 4.08, the Legislature intended to clearly retain the then existing right of review by the Circuit Court and the Court of Appeals in cases dealing with reclassification by local legislative bodies while simplifying its procedural aspects; and

WHEREAS, Some question has been raised as to whether the legislation does indeed provide for a simplified and clarified system for appeals to the Court of Appeals from Circuit Court decisions; and

WHEREAS, Such misconstruction of this statute could prevent appeals from reclassification by local legislative bodies from being pursued beyond the Circuit Court level; now, therefore, . . . .

Senate Bill 76 was a pre-filed bill introduced by the President of the Senate.

It will be recalled that Maryland Constitution Art. III, § 29 provides that "every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title . . . ." We have said that the purpose of this section is to inform the members of the General Assembly and the public of the nature of the proposed legislation. *City of Baltimore v. State,* 281 Md. 217, 225, 378 A.2d 1326 (1977), and *Balto. Transit Co. v. MTA,* 232 Md. 509, 521, 194 A.2d 643 (1963). See also Everstine, *Titles of Legislative Acts,* 9 Md. L. Rev. 197, 218-227 (1948). Chief Judge Murphy said for the Court in *MTA v. Balto. Co. Revenue Auth.,* 267 Md. 687, 695-96, 298 A.2d 413 (1973), citing a number of our prior cases, "That the title of an act is relevant to ascertainment of its intent and purposes is well settled."

The title of this particular act sheds substantial light on what the General Assembly had in mind when it substituted "zoning action" for "reclassification" in § 4.08 (a). It states:

AN ACT concerning

Planning and Zoning — Appeals

FOR the purpose of clarifying the right of appeal of decisions of the Circuit Court or the Baltimore City Court in zoning cases, to provide that counties, municipalities and the City of Baltimore may provide for an appeal to the Circuit Court or the Baltimore City Court of any matter arising under the planning and zoning laws of a county, municipality or the City of Baltimore *with certain limitations* and that the decision of the Circuit Court or Baltimore City Court may be appealed to the Court of Special Appeals, and making certain style changes.

BY repealing and re-enacting, with amendments, Article 66B — Zoning and Planning Section 2.09 (a) and (e), 4.08 (a) and (e) Annotated Code of Maryland (1970 Replacement Volume and 1974 Supplement)

BY repealing and re-enacting, with amendments,

Article 25A — Chartered Counties of Maryland
Section 5 (X)
Annotated Code of Maryland
(1973 Replacement Volume and 1974 Supplement)

BY adding to

Article 66B — Zoning and Planning
Section 2.09 (f) and 4.08 (f)
Annotated Code of Maryland
(1970 Replacement Volume and 1974 Supplement)

(The italics indicate an amendment in the process of the bill's trip through the General Assembly.) Chapter 267 contained several sections. One did indeed deal with the right of appeal of court decisions in zoning cases. Another concerned authority to counties, municipalities, and the City of Baltimore to provide for an appeal to the courts under their respective planning and zoning laws. Provision also was made for an appeal to the Court of Special Appeals from the decision of a circuit court or the Baltimore City Court. Changing the word "reclassification" to "zoning action" involves none of these. Accordingly, the only logical inference is that the General Assembly considered the change from "reclassification" to "zoning action" to be but a style change. Judge Weant may well have been correct when he observed in a companion case to these cases (to which he referred in his opinion in these cases) that this amendment may have been made "to eliminate the question of whether there was a review of a denial of reclassification . . . ."

In *Bureau of Mines v. George's Creek,* 272 Md. 143, 321 A.2d 748 (1974), Chief Judge Murphy said for the Court:

[I]t is well settled that because "the principal function of a Code is to reorganize the statutes and state them in simpler form, changes are presumed to be for the purpose of clarity rather than for a change in meaning." *Welsh v. Kuntz,* 196 Md. 86, 97, 75 A.2d 343 (1950). Even a change in the phraseology of a statute in a codification will not as a general rule

modify the law, unless the change is so radical or material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code. [*Id.* at 155.]

It certainly can be no less true that an enactment of the General Assembly specifying in its title that it is intended to make only stylistic changes is not intended to make a change of substance. Accordingly, given the legislative history of the section and the benefit of the title to the amendment providing for an appeal from a "zoning action," we conclude that the right of appeal specified by the General Assembly in § 4.08 (a) to one aggrieved "by a zoning action by the local legislative body" is an appeal from "a reclassification by the local legislative body," referring to piecemeal or "spot" zoning, not to comprehensive zoning or rezoning. Thus, the Court of Special Appeals was correct when it determined that the adoption of a "mini" plan was not a "zoning action" from which one might appeal, but it was incorrect when it conceived that there could be an appeal to the courts by one who objected to the enactment by a legislative body of a change in a zoning ordinance. Challenges in the courts to the adoption of comprehensive plans, zoning texts, and zoning text amendments must come in proceedings other than administrative appeals.

> *Judgment of the Court of Special Appeals affirmed in part and reversed in part and case remanded to the Court of Special Appeals for the passage of an order affirming the judgments of the Circuit Court for Carroll County; appellees to pay the costs.*