864 A.2d 218

**MBC REALTY, LLC et al.**

**v.**

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al.**

**No. 1312, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Dec. 27, 2004.

James E. Carbine, Baltimore, for appellant.

Herbert Better (P. Andrew Torrez, Zuckerman Spaeder LLP, on brief), Baltimore, for appellee.

Panel EYLER, JAMES R., ROBERT L. KARWACKI, (Ret., specially assigned), WILLIAM W. WENNER, (Ret., specially assigned), JJ.

EYLER, JAMES R., J.

MBC Realty, LLC, an appellant, and various other landowners in Baltimore City,[1] filed in the Circuit Court for Baltimore City a petition for judicial review of certain ordinances enacted by the Mayor and City Council of Baltimore, an appellee. The effect of the ordinances in question was to permit general

---

1. Other appellants include: Banc of America Community Development Corporation; Charles Plaza, L.L.C.; Charlesview, L.L.L.P.; Park Charles Apartments Associates, LLC; Park Charles Office Associates, L.L.C.; PGA One Charles Center Limited Partnership; PGA 210 N. Charles Street, L.L.L.P.; Redwood Square Apartments Limited Partnership; The Atrium at Market Square, L.L.C.; The Marlboro–Classic Limited Partnership; and 120 West Fayette Street, L.L.L.P.

advertising signs to be placed on the 1st Mariner Arena as a conditional use under the City's zoning laws. Appellants challenged the validity of the ordinances on the ground that they constituted illegal spot, piecemeal, contract, and conditional zoning and on the ground that they violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. Arena Ventures, L.L.C., pursuant to a contract with the entity that manages the Arena, has the right to sell advertising and signage for the Arena. Clear Channel Outdoor, Inc., pursuant to a contract with Arena Ventures, L.L.C., has the right to construct and maintain outdoor advertising signage on the Arena. Arena Ventures, L.L.C. and Clear Channel Outdoor, Inc. intervened as respondents and are additional appellees.

Appellants filed their petition pursuant to Md.Code (1957, 2003 Repl.Vol.), Art. 66B, § 2.09 (hereinafter " § 2.09") and Title 7, Chapter 200 of the Maryland Rules. The circuit court granted a motion to dismiss filed by appellees on the ground that Section 2.09 does not provide for an administrative appeal under the circumstances of this case. We agree with the circuit court and shall affirm the judgment.

## Factual Background

Prior to March 24, 2000, general advertising signs (commonly referred to as billboards), were permitted as conditional uses, subject to express limitations, in certain business and industrial districts in Baltimore City. On March 27, 2000, the City enacted an ordinance, which repealed and reenacted, with amendments, several sections of the zoning code, and also added new sections. The ordinance prohibited the placement of new advertising signs and permitted existing signs as nonconforming uses. The prohibition is commonly referred to as a "moratorium" on the construction of new billboards.

The ordinance recited, in part, that: (1) general advertising signs "constitute a separate and distinct use of the land on which they are placed and affect the use of adjacent streets, sidewalks" and other places open to the public; (2) the "unregulated construction, placement, and display of signs constitute

a public nuisance[;]" (3) general advertising signs "endanger the public safety by distracting the attention of drivers from the roadway and may endanger the public health, safety, and welfare[;]" and (4) general advertising signs "might also result in harm to the welfare of the City by creating visible clutter and blight and by promoting a negative aesthetic impact[.]" The result of the enactment of this ordinance was that general advertising signs ceased to be a conditional use and became a prohibited use.

On April 9, 2003, the City enacted the three ordinances in question. Ordinance 03–513 amended the 1977 Urban Renewal Plan for Market Center to provide that "[g]eneral advertising signs erected or placed on publicly-owned stadiums and arenas are allowed if approved by ordinance as a conditional use[.]" Ordinance 03–514 amended the zoning code to authorize, in the B–5 district, as a conditional use that required approval by ordinance, general advertising signs on publicly owned stadiums and arenas. The ordinance further provided that all bills seeking approval of such a conditional use had to be accompanied by a plan for the removal of at least one existing general advertising sign for each proposed sign. Ordinance 03–515 permitted the construction of general advertising signs on the 1st Mariner Arena, subject to express conditions, including the removal of certain signs at other locations in the City.

Ordinance 03–513 became effective upon enactment, and the other two ordinances became effective 30 days after enactment.

On April 14, 2003, appellants filed a petition for judicial review of the enactment of ordinances 03–513, 03–514, and 03–515.[2] The petition sought review pursuant to the provisions in section 2.09 and title 7, chapter 200 of the Maryland Rules. Appellants filed a motion to stay the effect of the ordinances in question and to receive additional evidence. *See* Rules 7–205

---

**2.** The petition was later amended, but the amendment is not material to the issues before us.

and 7–208. The court denied the motion. On July 1, 2003, appellees filed a joint motion to dismiss the petition on the ground that enactment of the ordinances was not a "zoning action" within the meaning of section 2.09(a)(1)(ii). By order dated August 15, 2003, the court granted the motion to dismiss.

*Provisions applicable to an administrative appeal*

Section 2.09 (a)(1)provides:

An appeal to the Circuit Court of Baltimore City may be filed jointly or severally by any person, taxpayer, or officer, department, board, or bureau of the City aggrieved by:

(i) A decision of the Board of Municipal and Zoning Appeals; or

(ii) A zoning action by the City Council.

Title 7, chapter 200 of the Maryland Rules govern actions for judicial review of an order or action by an administrative agency when judicial review is authorized by statute. *See* Rule 7–201.

*History of Section 2.09*

██ Article 66B is the zoning enabling act for Baltimore City and non charter counties.[3] Sections 2.01 to 2.13 set forth zoning powers for Baltimore, and sections 4.01 to 4.09 set forth zoning powers for non charter counties. Sections 2.09 and 4.08 (hereinafter " § 4.08") provide for an "administrative appeal"[4] pursuant to title 7, chapter 200 of the Maryland Rules from a decision of the Board of Municipal and Zoning Appeals in Baltimore and the Boards of Appeal in non charter

---

3. Article 66B applies to charter counties in enumerated instances. *See* §§ 1.02 and 1.03.

4. A petition for judicial review of an administrative action is not technically an appeal, but rather invokes the original jurisdiction of a court. *Bd. of License Com'rs for Anne Arundel County v. Corridor Wine, Inc.,* 361 Md. 403, 411, 761 A.2d 916 (2000). The court reviews the action under a deferential standard of review. A petition for judicial review is commonly referred to as an appeal or an administrative appeal, however.

counties (hereinafter sometimes collectively referred to as "Board"), and from a "zoning action" by the local legislative body. In Baltimore, the local legislative body is the City Council.

Article 66B was enacted in 1933. *Board of County Commissioners v. Gaster,* 285 Md. 233, 239, 401 A.2d 666 (1979). The statute provided for judicial review only from decisions by a Board and then only on writ of certiorari. *Board of County Commissioners of Carroll County v. Stephans,* 286 Md. 384, 391, 408 A.2d 1017 (1979). In 1962, the statute was amended to provide for judicial review of a decision by a Board, without the certiorari requirement. *Id.* at 392, 408 A.2d 1017.

Consequently, after the 1962 amendment, there was a statutory right of judicial review, as an administrative appeal, from a decision by a Board. There was no such right with respect to a decision by the local legislative body. With respect to decisions by a legislative body, a party had to file an action invoking the general jurisdiction of a court, arguing whatever theories were available under separation of powers principles, essentially that the legislation was unconstitutional or ultra vires. "The test of invalidity of a zoning ordinance is whether it is arbitrary, unreasonable and discriminatory, and has no substantial relation to the public health, safety, morals, or general welfare." *Cassel v. Mayor and City Council of Baltimore,* 195 Md. 348, 354, 73 A.2d 486 (1950).

In 1970, §§ 2.09 and 4.08 were amended to permit an administrative appeal from "a reclassification by the local legislative body," in addition to an administrative appeal from a decision by a Board. *Stephans,* 286 Md. at 392, 408 A.2d 1017. The right of review was pursuant to chapter 1100, subtitle B of the Maryland Rules. *Id.* (forerunner to title 7, chapter 200). The amendment was recommended by the Maryland Planning and Zoning Law Study Commission. The Commission explained,

This section is unchanged except for the inclusion of an appeal process from reclassification decisions of the local legislative body. It can be argued that under the present

system appeals from reclassification decisions may be launched in equity at any time. This has proven to be a detrimental factor to most persons concerned with such an action. The appeal process to be used, Chapter 1100, Subtitle B, Maryland Rules, requires noting of an appeal within thirty days and filing of the appeal within another ten days. This is ample time to bring an appeal for review (*i.e.* if a person is aggrieved by a decision it is incumbent upon him to react within a reasonable period of time).

*Id.* at 393, 408 A.2d 1017.

In 1975, the statute was amended and, in relevant part, in sections 2.09 and 4.08, substituted "zoning action" for "reclassification by the local legislative body." *Id.* The Court of Appeals, after reviewing the legislative history of the judicial review provisions in section 4.08 and relying specifically on language in the title to the amendment, concluded that the change to "zoning action" was stylistic and not substantive. *Id.* at 397, 408 A.2d 1017.

In *Stephans,* the County Commissioners of Carroll County approved the following matters as recommended by the Carroll County Planning and Zoning Commission: (1) adopted a comprehensive "mini" plan for the Freedom area of Carroll County; (2) added a new section to the county zoning ordinance providing for a "R–40,000 Residence District[;]" (3) changed the standards for approval of subdivisions; (4) provided for schools and colleges as a principal permitted use in a conservation zone; (5) specified that department stores be a permitted use in a local business district; and (6) comprehensively rezoned the Freedom area. *Stephans,* 286 Md. at 386, 408 A.2d 1017.

Landowners objected to the actions and sought judicial review pursuant to the provisions of section 4.08. The Court held that neither the adoption of the plan nor the amendment of the zoning text was a "zoning action." The Court stated that "zoning action" in section 4.08 meant " 'a reclassification by the local legislative body,' referring to piecemeal or 'spot' zoning, not to comprehensive zoning or rezoning." *Id.* The

Court further explained that "[c]hallenges in the courts to the adoption of comprehensive plans, zoning texts, and zoning text amendments must come in proceedings other than administrative appeals." *Id.*

As we have observed previously, to the extent relevant here, sections 2.09 and 4.08 are the same. Consequently, the holding in *Stephans* applies to section 2.09, as well as section 4.08.

## Contentions of the Parties

Appellants contend the enactment of the ordinances in question are subject to an administrative appeal because the enactment constituted "zoning action." Appellants acknowledge that comprehensive zoning or rezoning by a legislative body is not subject to an administrative appeal. Appellants recognize that the City Council did not engage in comprehensive rezoning but argue that it could not create a valid conditional use without engaging in comprehensive rezoning. Ordinance 03–514 was an invalid attempt to create a conditional use.

According to appellants, we should look to the essence of the action taken by the City Council and the particular facts in this case. When we do so, they contend, we will conclude that the Council's action constituted illegal spot or piecemeal zoning, even if we characterize the action as a text amendment to the zoning law. Appellants state: "The adjoining property owners are in exactly the same position as they would be in if the City had created a new 'billboard zone' and then moved the 1st Mariner Arena into the new zone." Appellants conclude that if we do not agree with their position, we will provide "a road map for any municipality who wants to engage in illegal spot zoning," insulated from an administrative appeal.

Appellants contend that an administrative appeal is the proper vehicle to challenge the effort to create a new conditional use, for the following reasons.

First, appellants contend that "reclassification," as used in *Stephans*, extends to reclassification of use, as well as reclassi-

fication of zone. Appellants argue that, because of the ban on new billboards, the City Council could not have changed the zone in which the Arena is located to achieve the result it wanted, but the change in use produced the same result and was tantamount to a change in zone.

Second, appellants contend that 03–514 constitutes illegal piecemeal, spot zoning. Appellants argue that it constitutes piecemeal zoning because it was not part of a comprehensive rezoning, and it constituted spot zoning because the ordinance singled out the Arena as exempt from the billboard moratorium.

Third, appellants contend that, even if the ordinances effected text amendments to the zoning law, some text amendments are reviewable in an administrative appeal, including the amendments in question, which resulted in a reclassification.

Fourth, appellants contend that 03–515 is subject to an administrative appeal because, had the decision been made by the Board of Municipal and Zoning Appeals, it would have been reviewable. Because the City Council performed an administrative function when it enacted 03–515, it constituted "zoning action." Because 03–515 can be appealed, under the doctrine of "pendant jurisdiction," 03–514 can be reviewed.

Fifth, appellants contend that the nature of the action before the court depends upon allegations contained in the complaint, and the allegations in the petition for judicial review were sufficient to constitute "zoning action."

Appellees, to state the obvious, disagree. The essence of appellees' position is that "zoning action" refers to reclassification of property from one zone to another and not to text amendments. Ordinances 03–513 and 03–514 are text amendments, and 03–515 did not change the zoning classification. With respect to appellants' last contention, appellees argue this is an administrative appeal and is governed by the record, not the allegations in the petition. In any event, the allegations are insufficient as a matter of law.

## Discussion

 Fortunately for us, much of the work relevant to the meaning of "zoning action" was done by Judge Marvin Smith in *Stephans*. We know from that decision that when a legislative body comprehensively zones, comprehensively rezones, or adopts a text amendment to a zoning ordinance, it is not "zoning action." We also know that when a legislative body changes the zoning classification of a particular property, it is. "zoning action" subject to administrative appeal.

 It may be helpful to discuss some general zoning concepts, recently explained at length by Judge Glenn Harrell in *Mayor and Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 814 A.2d 469 (2002). "Plans and determinations regarding appropriate land use zoning categories" are implemented primarily through three processes: "1) original zoning; 2) comprehensive rezoning; and 3) piecemeal rezoning." *Rylyns Enterprises, Inc.*, 372 Md. at 532, 814 A.2d 469. The first two are purely legislative processes, while piecemeal zoning occurs as a result of a quasi-judicial process leading to a legislative act. *Id.* Restrictions within a zone must apply uniformly to all properties within that zone. *Id.* at 538, 814 A.2d 469. Consequently, original or comprehensive zoning may be changed by subsequent piecemeal zoning only on a showing of mistake in the original or comprehensive zoning or a substantial change in the character of the neighborhood since the original or comprehensive zoning. *Id.* Spot zoning occurs when a small area in a zoning district is placed in a different zoning classification than the surrounding property. *Id.* at 546, 814 A.2d 469. Spot zoning is illegal if it is inconsistent with an established comprehensive plan and is made solely for the benefit of a private interest. *Id.* Contract zoning occurs when the zoning authority and a property owner enter into an agreement which determines how the property in question will be zoned, regardless of the legal prerequisites for that zone. *Id.* at 547, 814 A.2d 469. Conditional uses are legislatively created, are distinguishable from conditional zon-

388

ing, and do not involve a change in zoning classification. *Id.* at 543, 814 A.2d 469.

### 1. Conditional use

■ Appellants contend that 03–514 established a new conditional use in a B–5 zone which had to be established as part of comprehensive zoning or rezoning. Once established, appellants observe, a conditional use is normally approved or disapproved by the Board in the jurisdiction in question, not the legislative body.

Article 66B, section 2.01 grants general planning and zoning powers to the City, including the power to regulate and restrict the location and use of structures and land. Section 2.05 empowers the City to "amend or repeal regulations, restrictions, and boundaries." Appellants rely on several cases, including quoted passages from *Mayor and Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 537–538, 814 A.2d 469 (2002), and *Rockville Fuel & Feed Co. v. Board of Appeals of City of Gaithersburg*, 257 Md. 183, 188, 262 A.2d 499 (1970). While noting that the passages quoted discuss zoning concepts generally and do not specifically address appellants' point, we do not reach the issue on the merits. The question whether any alleged illegality is reviewable on administrative appeal, as distinguished from an action invoking the general jurisdiction of a court, is determined by whether enactment of the ordinances in question constituted a reclassification, as discussed and explained in *Stephans*. There was no such reclassification.

### 2. Reclassification

■ Appellants contend reclassification, as discussed in *Stephans,* includes a change in use as well as a change in zone. Appellants argue that the reclassification of use produces the same result as a reclassification from one zone to another and, therefore, is a type of reclassification contemplated by *Stephans*.

Ordinances 03–513 and 03–514 are text amendments and not subject to administrative appeal. *Stephans,* 286 Md. at 397, 408 A.2d 1017. Ordinance 03–515 is not a text amendment, but it does not reclassify property with respect to either zone or use. It grants a conditional use. The merits of appellants' arguments that reclassification of use is tantamount to reclassification of zone and, thus, illegal, are not before us.

### 3. Piecemeal zoning

■ Appellants contend that the enactment of the ordinances constituted piecemeal zoning because the result was tantamount to a change in zoning classification and was not part of a comprehensive zoning. It was spot zoning because it singled out the Arena.

The ordinances in question did not change the zoning classification applicable to the Arena. The question of whether the enactments are illegal is not before us.

### 4. Reviewability based on text amendments

Appellants, relying on *Cardon Investments v. Town of New Market,* 302 Md. 77, 485 A.2d 678 (1984), contend that, even if the ordinances in question effected text amendments, some text amendments are reviewable in an administrative appeal. In *Cardon Investments,* however, there was a change in zoning classification. Moreover, the *Cardon Investments* Court expressly reaffirmed *Stephans.* We have found no support for appellants' proposition. Again, the question of illegality cannot be determined in this proceeding.

### 5. Reviewability based on administrative act

■ Appellants contend that 03–515 can be reviewed in this context because the City Council acted administratively in granting the conditional use. Thus, it should be reviewable as if the Board of Municipal and Zoning Appeals had granted it. We disagree. The plain language of section 2.09 permits an administrative appeal from legislative acts of the City Council only if they constitute "zoning action." The granting of a conditional use is not a change in zoning classification.

### 6. The allegations

 Appellants contend that the nature of the court action is determined from the four corners of the petition, and the allegations are sufficient to support an administrative appeal. We disagree. Appellants did not file a "complaint," but rather a petition for judicial review of an administrative agency decision. The requirements with respect to the contents of a petition are minimal. *See* Md. Rule 7–202(c). Ordinarily, the matter is decided on the record made in the agency proceeding. *See* Md. Rules 7–206 and 7–208. Even if it were otherwise, the petition shows on its face that enactment of the ordinances in question did not constitute "zoning action."

We conclude by noting that, at or about the same time that appellants filed a petition for judicial review in circuit court, they filed a separate suit in circuit court, invoking the court's general jurisdiction. At the request of appellees, the case was removed to the United States District Court for the District of Maryland, based on an allegation that the ordinances violated the equal protection clause of the Fourteenth Amendment. Appellees filed a motion to stay, and appellants filed a motion to remand. Both motions were denied, and no further proceedings have occurred. There is nothing in this opinion that prevents appellants from pursuing the questions of illegality, not properly before us in this case, in the separate suit.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**