WASHINGTON COUNTY TAXPAYERS ASSOCIATION,
INC. ET AL. *v.* BOARD OF COUNTY COMMIS-
SIONERS OF WASHINGTON COUNTY,
MARYLAND ET AL.

[No. 328, September Term, 1972.]

*Decided July 6, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH and LEVINE, JJ.

*Vincent R. Groh* for appellants.

*James F. Strine* for appellees.

SMITH, J., delivered the opinion of the Court.

This case is a challenge to the adoption of the comprehensive plan for Washington County. The attack is based upon contentions of inadequate notice of a public hearing and of an improper public hearing by the Washington County Planning and Zoning Commission. We agree with the trial judge that the plan was properly adopted.

We suspect that a part of the problem in this case may be some confusion relative to the terms planning and zoning. On this subject 101 C.J.S. *Zoning* § 4 (1958), states:

"While 'zoning' and 'planning' have been considered so closely akin as to constitute a single concept, and there is a definite and harmonious relationship between them, they do not cover identical fields of municipal endeavor, and the terms are not synonymous or interchangeable, although they are sometimes used interchangeably. They are not identical in concept, although closely related therein and there is a distinction, as well as

456

a difference, between them, zoning being concerned primarily with the use of property.

"So, zoning may not entirely exclude planning; planning embraces zoning, in a general way, but the converse is not true, municipal 'planning' being a term of broader significance than 'zoning.' " *Id.* at 671-72.

*See also* E. Yokley, *Zoning Law and Practice* § 1-2 (3rd ed. 1965), and *Mansfield & Swett, Inc. v. West Orange*, 120 N.J.L. 145, 149, 198 A. 225 (1938), where it is said that planning "connotes a systematic development contrived to promote the common interest in matters that have from the earliest times been considered as embraced within the police power," or *State v. Ohio Power Co.*, 163 Ohio St. 451, 460, 127 N.E.2d 394 (1955), stating that planning "embraces the systematic and orderly development of a community with particular regard for streets, parks, industrial and commercial undertakings, civic beauty and other kindred matters properly included within the police power."

Most of the counties of Maryland, including Washington County, have had the power to set up planning commissions and to adopt county plans since the passage of Chapter 599 of the Acts of 1933. Pursuant to the authority of what is now Code (1957, 1970 Repl. Vol.) Art. 66B, § 3.01, Washington County proceeded to appoint such a commission. By § 3.05 it became "the function and duty of the commission to make and approve a plan [to] be recommended to the [County Commissioners of Washington County] for adoption ....." Upon adoption the plan would "serve as a guide to public and private actions and decisions to insure the development of public and private property in appropriate relation-ships ...." As a minimum it was required to contain "[a] statement of goals and objectives, principles, policies, and standards [to] serve as a guide for the development and economic and social well-being of [Washington County]," a land use element, a transportation plan element, a com-munity facility plan element, and an element containing the planning commission's recommendations for land

development regulations to implement the plan. In the preparation of its plan the commission was mandated by § 3.06 to "make careful and comprehensive surveys and studies of present conditions and future growth of the jurisdiction, and with due regard to its relation to neighboring territory . . . with the general purpose of guiding and accomplishing the coordinated, adjusted, and harmonious development of the jurisdiction, and its environs which [would], in accordance with present and future needs, best promote health, safety, morals, order, convenience, prosperity, and general welfare, as well as efficiency and economy in the process of development; including among other things, adequate provisions for traffic, the promotion of public safety, adequate provision for light and air, conservation of natural resources, the prevention of environmental pollution, the promotion of the healthful and convenient distribution of population, the promotion of good civic design and arrangement, wise and efficient expenditure of public funds, and the adequate provision of public utilities and other public requirements." Unless overruled as provided in § 3.08, once the plan is adopted "as a whole or for one or more geographic sections or divisions of the jurisdiction, no street, square, park or other public way, ground, or open space, or public building or structure, or public utility, whether public or privately owned, shall be constructed or authorized in the jurisdiction or major geographic section thereof until the location, character, and extent of such development shall have been submitted to and approved by the commission as consistent with the plan . . . ."

Sec. 3.07 provides that "[b]efore recommending the adoption of the plan . . . the commission shall hold at least one public hearing thereon, notice of the time and place of which shall be given by one publication in a newspaper of general circulation in the jurisdiction." Unlike the provisions relative to zoning where § 4.04 requires a hearing by the local legislative body (the county commissioners in this instance) before adoption of a zoning ordinance, no hearing by the County Commissioners of Washington County was mandated.

Appellants Julian Oliver and Edgar W. King (taxpayers and residents of Washington County) and the Washington County Taxpayers Association, Inc., sued the County Commissioners of Washington County and the Washington County Planning and Zoning Commission seeking a declaratory judgment that the plan adopted by the County Commissioners of Washington County on October 12, 1971, was invalid, unconstitutional and unenforceable, together with an injunction against acting, administering, or enforcing or applying the provisions of the plan "to the Petitioners or their property."

The challenge is based upon a contention that the notice of public hearing was not legally adequate and that the hearing did not "afford the public the opportunity to speak against the plan and to oppose the concept of and the need for the same," believed by them to be mandated under § 3.07. They particularly refer in their objections relative to notice to the reference to "preliminary report" appearing in the notice. This was an obvious inadvertence or oversight since that terminology is found in § 3.05 (d) relative to the procedure for the adoption of zoning. The other contentions relative to the hearing are tied in with the appellants' second point, a claim that at the hearing they were not permitted to voice their objections to the adoption of any plan and that they were limited to an argument of three minutes per person. They say they take "the position that the purpose of a public hearing is to permit the public to state their positions for and against the issue under consideration, and to criticize as well as recommend, to present objections as well as approval and to protest."

The notice of public hearing read as follows:

"PUBLIC HEARING
October 6, 1971
7:00 P.M.
Court Room No. 1
Court House, Hagerstown, Maryland
"Pursuant to the provisions of Article 66B of the
Code of Public General Laws of Maryland, entitled

Maryland Planning and Zoning Enabling Act, a preliminary report and proposed plan for Washington County, Maryland has been compiled for the Washington County Planning and Zoning Commission by William C. McDonnell Consultant, Baltimore, with Baker-Wibberly and Associates, Hagerstown, Maryland. The preparation of this report was financially aided through a federal grant of the Department of Housing and Urban Development, under the Urban Planning Assistance Program authorized by Section 701 of the Housing Act of 1954, as amended. Said report was also administered by the Maryland Department of Planning.

"Copies of said report and proposed plan for Washington County are on file with the County Commissioners, Washington County Planning and Zoning Commission and with all State and local planning agencies; and said report and proposed plan is available for inspection; and same is incorporated herein and made a part hereof by reference.

"Notice is hereby given that pursuant to the aforesaid statutory provisions that a public hearing will be held in Court Room No. 1 in the Court House, Hagerstown, Maryland on Wednesday, October 6, 1971, at 7:00 P.M. with reference to said preliminary report and proposed plan for Washington County, Maryland.

WASHINGTON COUNTY
PLANNING & ZONING COMM.
By: Donald R. Frush, Chairman
COUNTY COMMISSIONERS FOR
WASHINGTON COUNTY
By: W. Carlton Parsley, Clerk"

At the hearing the chairman of the planning commission announced that slips would be passed out, stating, "We ask

all that are here tonight to sign the little form that the secretaries have so that I don't miss anyone if you want to be heard." After noting that "four public information meetings on the Plan" had been held subsequent to its tentative approval by the commission and that 97 meetings had been held to gather the "views, comments and desires" of the Washington County community, the chairman referred to the procedure for adoption of a plan and the content of the then proposed plan itself. He then said:

"The Commission has established rules for this hearing. Each speaker will be allocated three minutes to present their opinion on the 'Plan for the County.' No speaker will be allowed to take any greater time at this hearing as there are others who may want to speak. At this public hearing, all statements will be recorded on tape recorder and transcribed. Each speaker appearing at the microphone should give his or her name, address, affiliation, or group represented or if on own behalf. If three minutes are not enough time to present recommendations on the Plan, the remainder of his or her statement can be presented in writing prior to the 8th of October, 1971 and these written statements will be given consideration as though it had been made verbally at this public hearing. No speaker will be permitted to speak a second time at this hearing. This public hearing will continue until all have had an opportunity to present their views. We may be here 'til late morning."

Then, after referring to certain letters relative to the plan that had been received, the chairman stated that the commission would first hear from individuals. He then asked for "the sign-in sheets," and said:

"We will give everybody an opportunity both for and against or recommendations or however you want to consider it. Everyone will be heard. And I'm not a segregationist, so we're just going right

down the pile. If you have something to say when your name is called, we ask that you come to the microphone, present your name, whom you represent, and your statement. Three minutes will be verified by the attorney and he will nudge me at the end of those three minutes, and then we will have to ask that you give us the rest of your statement in writing. With that in mind, we will proceed to hear individuals. Starting with Mr. Richard Gucker [, Director of Regional and Local Planning Programs of the Maryland State Department of Planning,] to present a statement. There is 'no' circled on here, but I am still going to give everyone an opportunity. If I call your name and you still don't want to give a presentation after reviewing some of the facts of the Plan, you may still want to say it looks good as those did down in the valley to me the other day."

The chairman then proceeded with the roll call. Many individuals indicated they had no comment. Some said a written statement would be submitted. Some praised the plan and urged its adoption. Some opposed the plan. Edgar W. King, one of the parties to this proceeding, and the attorney for appellants were each heard. Mr. King said in part in expressing his opposition:

"So, instead of protecting the individual, planning and zoning, in fact, stifles him and restricts his liberties without giving him protection against big money or political interest. Planning and zoning discriminates against the small individual and violates the basic principle of our free enterprise sytem. Planning and zoning offers no protection against big money and political interests who are able to change it almost at will. Planning and zoning is just another big step towards socialism. It takes away those liberties and rights of the individual and gives control to big government,

> which breeds corruption among public officials. . . .
> All of the above statements can be very easily
> verified by checking any sections of this country
> that has planning and zoning."

Counsel for the appellants in his comments at the commission hearing said he was representing himself. He offered some criticisms of the proposed plan saying, "[T]he statistics in the book don't match with the recent Potomac Edison Marketing Survey. They're off terrifically. I'd like to know where they get them." He questioned "whether any consideration ha[d] been given to the effect on the tax rate when you effectively put out of development over a half of the prime land in the County." When the chairman asked for his specific recommendation, he responded with a suggestion that the commission "recheck the statistics." Counsel then voiced his "basic objection to [the plan] again [as] the waiving of the freedom of the individual against the needs of the public." When again asked for his recommendations, he stated his "recommendations [were] against it because of the burdens, the hindrances, inconvenience, expense, and the denial of the freedom of the individual which accompanies it," stating he thought "the possible benefit . . . will . . . fall short of the detriment caused by it," that "for that reason [he was] opposed to the Plan because it [was] running into the zoning," being "just the beginning," that after that would come "more regulations and more regulations," and he did not "see the need."

The notice informed the citizenry of Washington County that a "public hearing" would be held relative to the "proposed plan for Washington County, Maryland." We regard that as a notice calculated to inform any interested citizens of the need to be present if they desired to inform themselves or to express their views relative to the plan.

The orderly manner in which this hearing was conducted is in sharp contrast to that mentioned in *Ford v. Baltimore County,* 268 Md. 172, 179, 300 A. 2d 204 (1973), where "it was next to impossible to get to the speakers' rostrum" and "the speakers who managed to reach the rostrum [could not] be

heard or make an intelligible talk because of the booing, hooting, catcalling and other shouting." In *Ford* written comments which were submitted were not read. We remanded *Ford* with directions that "a proper hearing" be held.

It is apparent in this case from the excerpts we have quoted that the persons present at the hearing were permitted to express their general opposition to the adoption of a comprehensive plan. On the subject of the time limitation we note that the commission made plain that it would consider any written comments, but no comments were filed subsequent to the hearing. We find of interest *Inganamort v. Borough of Fort Lee,* 120 N.J. Super. 286, 293 A. 2d 720, 724 (1972), *aff'd on other grounds,* 303 A. 2d 298 (1973), where a New Jersey statute mandated a public meeting relative to a municipal ordinance. The New Jersey court upheld a limit of five minutes upon each speaker initially and an additional five minutes after all speakers were heard. It said it found "nothing patently unreasonable with such limitations."

If there were not some limitation upon the time to be consumed by any one person at a hearing such as this where there is widespread public interest, many persons inevitably would be deprived of the right of orally expressing their views or such hearing would consume an inordinate amount of time and a person might well be placed at a serious disadvantage in attempting to make his views known. It is an unfortunate fact that those who desire to talk the longest do not always make the most forceful, intelligent, persuasive presentation, nor do their comments always contain the most substance, to all of which many appellate judges can attest. Even such an august body as the United States House of Representatives has for generations operated with a limitation upon debate. We ourselves have seen fit in Maryland Rule 846 a to limit oral argument in this Court. We hold that the three minute limitation here imposed, when coupled with the offer to transmit to the county commissioners with the typewritten transcript of the hearing the complete text of any written statement any

individual might submit, did not impair the validity of the hearing.

It must be borne in mind that the planning commission was not the legislative body. Insofar as this plan was concerned it had one function and only one function, to devise and to transmit to the county commissioners the best possible plan for Washington County, bearing in mind the criteria of Art. 66B, § 3.05 which we have earlier mentioned. It was to that end the hearing was held and to which the comments of those present should have been directed. It was not the function of the commission to determine whether there should be a plan. The county commissioners made that decision when they created the planning commission. If the appellants wished to oppose adoption of this particular plan or, notwithstanding the earlier decision of the legislative body to formulate and adopt a plan, they still wished to oppose adoption of any plan, then the place for such opposition was before the legislative body, not the planning commission.

It would appear that the prime item of concern of the appellants was not the master plan, but opposition to any zoning. The fact that a plan was adopted did not necessarily mean that it would be implemented by the later adoption of a comprehensive zoning ordinance. Point is made of the fact that the only public hearing provided on the adoption of a master plan is by the planning commission, with none being required by the county commissioners. Those opposed to any zoning undoubtedly had full opportunity to give vent to that opposition before adoption of the comprehensive zoning plan which we are advised later came into Washington County since under § 4.04 the county commissioners are not permitted to adopt a zoning ordinance without first holding a public hearing.

We find the comprehensive plan to have been validly adopted. The chancellor although concluding his opinion by stating he found "the plaintiffs' contentions without merit," nevertheless signed an order dismissing the bill. The court order in this instance should have declared the rights of the parties according to the views expressed in the judge's

opinion by specifying that the plan was validly adopted. *City of Baltimore v. Silver*, 263 Md. 439, 462-63, 283 A. 2d 788 (1971), and *Hunt v. Montgomery County*, 248 Md. 403, 410, 237 A. 2d 35 (1968). To that extent the decree must be modified.

> *Decree modified and as modified affirmed; appellants to pay the costs.*